UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,

     v.                                     5:17-CR-0118
                                          (DNH)

FELIPE ORTEGA-ARRIETA,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                             OF COUNSEL:

UNITED STATES ATTORNEY'S OFFICE     ROBERT S. LEVINE, ESQ.
100 South Clinton Street, Room 900       Assistant U.S. Attorney
Syracuse, New York 13261

OFFICE OF THE FEDERAL PUBLIC DEFENDER   JUAN J. RODRIGUEZ, ESQ.
Northern District of New York                Assistant Federal Public Defender
Attorneys for Defendant
4 Clinton Square, 3rd Floor
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM, DECISION and ORDER

**I.    INTRODUCTION**

On May 25, 2017, defendant Felipe Gregorio Ortega-Arrieta ("Ortega-Arrieta" or "defendant") was charged in a one count indictment with illegal reentry after a felony conviction in violation of 8 U.S.C. § 1326. See Indictment, ECF No. 5. On July 11, 2017, defendant moved to dismiss the indictment. See Motion, ECF No. 10. The government opposes the motion and defendant has replied. See ECF Nos. 11 & 12. Oral argument was held on August 18, 2017 in Utica, New York.

**II.    FACTUAL BACKGROUND**

Immigration authorities arrested Ortega-Arrieta, a Mexican citizen, in the early morning hours of May 22, 2017. At approximately 12:30 a.m., immigration officers encountered

defendant at the Regional Transportation Center in Syracuse, New York. Officials determined that defendant had been convicted of three drug felonies in Honolulu, Hawaii on February 28, 1996 by a plea of no contest. As a result, defendant was ordered removed from the United States on July 8, 1996 and was actually removed on November 7, 1997.

On June 12, 2017, the government provided discovery to Ortega-Arrieta, which included his immigration records. Such records included reports from the ENFORCE Alien Removal Module. Defendant contends that one such report indicates that federal officials encountered defendant on July 12, 2007, although the report does not provide any details regarding the alleged encounter. See Affirmation of Juan Rodriguez, Ex. A, ECF No. 10-2 at 2. The government asserts that no such encounter took place.

Further, on January 3, 2010, Ortega-Arrieta was arraigned in New York County Criminal Court for Possession of a Forged Instrument in the Second Degree.[1] On or about November 8, 2010, the New York City Police Department ("NYPD") issued a warrant for defendant's arrest after he failed to appear at a court appearance on March 24, 2010. This warrant information was entered into the National Crime Information Center ("NCIC") system on or about December 15, 2011. See Rodriquez Aff., Ex. B, ECF No. 10-2, at 4. The arrest warrant was still outstanding at the time of defendant's arrest on May 22, 2017.

## III.  DISCUSSION

Ortega-Arrieta asserts that the indictment must be dismissed as untimely as it was entered more than five years after either: (a) defendant's alleged encounter with immigration officials on July 12, 2007 or (b) federal officials becoming aware of the outstanding warrant for defendant on December 15, 2011. The government contends that the indictment was timely filed

---

[1] At oral argument, defense counsel stated that defendant was not arrested or arraigned with respect to the New York State charge, but rather had been questioned and released at some point prior to January 3, 2010. However, defendant did not provide an affidavit or other supporting documentation to counter the information contained in the warrant. See Gov't Mem. of Law, Ex. 7, ECF No. 11-7.

- 2 -

as the statute of limitation was tolled from March 24, 2010, the date defendant failed to appear for his New York State court appearance, until the time of his arrest on May 22, 2017.

Section 1326 imposes criminal penalties on any alien who, having previously been deported from the United States, subsequently "enters, attempts to enter, or is at any time found in, the United States" without prior express consent of the Attorney General. See 8 U.S.C. § 1326(a)(2). An indictment charging a violation of § 1326 must be handed down within five years after such offense was committed. See 18 U.S.C. § 3282; see also United States v. Morgan, 380 F.3d 698, 701 (2d Cir. 2004). "Statute of limitations are designed 'to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past,' as well as 'encouraging law enforcement officials promptly to investigate suspected criminal activity.'" Morgan, 380 F.3d at 703 (quoting Toussie v. United States, 397 U.S. 112, 114 (1970)). "'[C]riminal limitations statutes are to be liberally interpreted in favor of repose.'" United States v. Rivera-Ventura, 72 F.3d 277, 281 (2d Cir. 1995) (quoting Toussie, 397 U.S. at 115).

      (a) *The Statute of Limitations Began To Run No Later Than December 15, 2011.*

Statute of limitations in criminal cases normally begin to run when the crime is "complete." Toussie, 397 U.S. at 115. The completeness of the offense of being "found in" the United States "depends not only on the conduct of the alien but also on acts and knowledge of the federal authorities." Rivera-Ventura, 72 F.3d at 281. The Second Circuit has found that the offense of being "found in" the United States in violation of § 1326 is complete when "the authorities both discover the illegal alien in the United States . . . and know, or with the exercise

of diligence typical of law enforcement authorities could have discovered, the illegality of his presence . . ." Id. at 282; see also United States v. Williams, 733 F.3d 448, 453 (2d Cir. 2013), United States v. Mercedes, 287 F.3d 47, 54 (2d Cir. 2002).  The statute of limitations begins to run not at the time of the alien's reentry but "only upon the INS's subsequent discovery of his presence in the United States." United States v. Acevedo, 229 F.3d 350, 356 (2d Cir. 2000). Knowledge of a defendant's presence in the United States by state officials is not imputed to federal officials until notification has been made to such federal immigration officials. See id. at 354.

In United States v. Williams, 733 F.3d 448 (2d Cir. 2013), the Second Circuit was confronted with an analogous case.  In 2002, federal officials were notified via the NCIC system of a 1999 arrest of Williams, a previously deported felon.  Noting that determining when the statute of limitations begins to run in "found in" reentry cases is "complex", the Court concluded that while federal officials need not make physical contact with the alien for them to be found, the alien's presence must be "discovered", meaning that "federal authorities possess reliable information as to the alien's whereabouts." Id. at 455.  The Court determined that the federal official's 2002 discovery that defendant had been arrested in 1999 did not provide reliable information as to the alien's then likely physical location and therefore the defendant had not been "found" by federal officials for the purposes of 8 U.S.C. § 1326.  Id.  The Court did however find that the defendant was "found" in the autumn of 2010,  a point in time earlier than defendant's November 2010 arrest, when federal officials observed that the defendant had been in a traffic accident in 2008 and located evidence of recent parking violations which provided possible addresses for the defendant.  Id.

Reviewing the information supplied by the government, the NCIC database is available to all federal law enforcement agencies across the United States.  The warrant information

provided by the NYPD on December 15, 2011 identified defendant's real name, date of birth, place of birth, New York driver's license number, FBI identification number and defendant's address, 464 East 115th Street, New York, New York. See Gov't Mem. of Law, Ex. 7, ECF No. 11-7.

Ortega-Arrieta asserts that given the warrant information, federal officials, with the exercise of diligence typical of law enforcement authorities, could have and should have, discovered his location in the United States in December 2011. However, the Second Circuit has been clear in concluding that the reasonable diligence requirement applies only to the second requirement of the Rivera-Ventura test, the federal official's knowledge of the illegality of an alien, and does not apply to the first requirement, discovering the alien in the United States. See Williams, 733 F.3d at 454. But unlike the Court's concern that "law enforcement authorities [would be required] to follow up on every piece of material information entered into a large system supervised by a limited staff", federal officials were notified of defendant's arrest warrant pursuant to his FBI identification number via the NCIC system and provided specific information including his residential address from the prior year. Id. While the government may need "sufficient time to discover and investigate the crime," similar to Williams, federal officials obtained specific information concerning defendant's whereabouts in December 2011. Further, there is no allegation by the government that defendant provided incorrect or false information to the state court officials. See Mercedes, 287 F.3d at 54 (by giving a false name when apprehended by state officials, defendant deceived law enforcement officials and they did not have actual notice of his presence in the United States).

Given such facts, the government possessed reliable information as to Ortega-Arrieta's physical location on December 15, 2011. Further, the parties do not dispute that the second requirement of the Rivera-Ventura test was met in 2011, that federal officials knew that defendant was in the United States illegally in light of the fact that they knew he had previously been deported as a result of felony convictions. Therefore, the statute of limitations began to run on December 15, 2011.

  *(b) The Statute of Limitations Did Not Toll.*

"No statute of limitations shall extend to any person fleeing from justice." 18 U.S.C. § 3290. The government has the burden of proving flight by a preponderance of the evidence. See United States v. Florez, 447 F.3d 145, 149-50 (2d Cir. 2006). Flight is proven by demonstrating that the defendant sought to avoid arrest or prosecution. Id. at 152. It is the Court, rather than the jury, that decides whether the government has proven flight. Id. at 150. A defendant's flight from unrelated state or federal charges also tolls the statute of limitations on a pending federal charge. See United States v. Catino, 735 F.2d 718, 721 (2d Cir. 1984).

The intent to flee is a critical element to any finding of flight. See Florez, 447 F.3d at 151; Rivera-Ventura, 72 F.3d at 283. In finding intent, relevant evidence includes whether a defendant fails to surrender to law enforcement while charges are pending. See Florez, 447 F.3d at 151. A person may flee from justice without physically departing the jurisdiction, because "[i]n modem large and heavily populated districts it is almost as easy to avoid arrest or prosecution by concealing oneself within the district as by fleeing the district." Id. at 152. The "nature and extent" of efforts to locate the defendant also is one factor to be weighed. Id.

The government contends that Ortega-Arrieta's failure to appear on his New York state charge on March 24, 2010 evidences an intent to flee and therefore bars him from invoking a

- 6 -

statute of limitations defense. However, the government has not made a showing that defendant intended to flee from prosecution or arrest.

Courts have held that a failure to make a court appearance, in and of itself, does not necessarily render a defendant a fugitive from justice for the purposes of § 3290. See United States v. Singleton, 702 F.2d 1159 (D.C. Cir. 1983). The government failed to present evidence that Ortega-Arrieta was notified of his court date on March 24, 2010 or that efforts were made to locate him within a reasonable period of time after his failure to appear. Unlike numerous Second Circuit cases were the statute of limitations was tolled, there is no accusation that defendant attempted to deceive law enforcement officials by concealing his true identity or providing false information. See Rivera-Ventura, 72 F.3d at 280 (defendant provided law enforcement a false name); Mercedes, 287 F.3d at 55 (defendant provided false name and birth date). Additionally, there is no allegation that he fled the jurisdiction or otherwise concealed his location with the intent of avoiding prosecution. Rather, when arrested on May 22, 2017, defendant answered federal officials questions honestly regarding his personal information or immigration status and made no attempt to hide his identity. See Glenn Aff., Ex. 3, ECF 11-3.

For these reasons, the government has failed to demonstrate that Ortega-Arrieta's failure to appear at the March 24, 2010 proceeding resulted from an intent to flee justice rather than a more innocent explanation, such as forgetfulness or a misunderstanding that the matter had been resolved. As a result, the government has not met its burden and the statute of limitations was not tolled at any point in time.

The indictment charging Ortega-Arrieta with illegal reentry was filed on May 25, 2017. As the statute of limitation did not toll, pursuant to 18 U.S.C. § 3282, the offense must have been completed at some point after five years earlier, or after May 25, 2012. However, the offense was, in fact, completed on December 15, 2011 when the government obtained reliable information as to defendant's whereabouts. As a result, the indictment is untimely and must be dismissed.

*(c) The "Found In" Statute of Limitations Issue is Properly Raised Pretrial.*

The government contends that the question of whether defendant was "found in" the United States during the applicable statute of limitations period is one for the jury to determine.

A court may dismiss an indictment that is legally insufficient. See United States v. Tanu, 589 F.2d 82, 86-87 (2d Cir. 1978). "[A] pre-trial motion to dismiss based on statute of limitations grounds may be premature if the indictment is facially sufficient and the defendant's argument in favor of dismissal requires a determination of factual issues." United States v. FNU LNU, 2007 WL 1149261, at *2 (S.D.N.Y. Apr. 12, 2007) (citation omitted), see also United States v. Hoskins, 73 F. Supp. 3d 154, 159-160 (D. Conn. 2014). "When deciding a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b), a court must accept all factual allegations in the indictment as true." United States v. Thomas, 492 F. Supp. 2d 405, 412 (S.D.N.Y. 2007) (citing United States v. Clarke, 2006 WL 3615111, at *1 (S.D.N.Y. Dec. 7, 2006)).

The government is correct that the indictment is facially sufficient as it tracks the language of 8 U.S.C. § 1326 and fairly informs Ortega-Arrieta of the charge against him. However, while there is a factual dispute with regards to whether the alleged 2007 encounter between Ortega-Arrieta and federal immigration officials occurred, there is no dispute regarding the facts surrounding the December 15, 2011 disclosure to federal officials regarding defendant's outstanding warrant. Contrary to the government's argument, "it is clear that determining

whether a defendant was 'found in' the United States for statute of limitations purposes only may properly be resolved on a motion to dismiss." See United States v. Manners, 2007 WL 1406620 at *3 (S.D.N.Y. May 9, 2007). The Second Circuit cases considering when the statute of limitations begins in "found in" reentry cases all support the conclusion that such legal question is appropriately answered by district court judges. See Rivera-Ventura, 72 F.3d at 280, Acevedo, 229 F.3d 356, Mercedes, 287 F.3d at 55. Therefore, defendant's motion to dismiss the indictment is properly considered via a pretrial motion to dismiss.

## IV.     CONCLUSION

For the reasons set forth above, the statute of limitations began on December 15, 2011 and was not tolled pursuant to 18 U.S.C. § 3290. As the indictment was not filed until May 25, 2017, more than five years after completion of the charged offense, the indictment is barred as untimely. Accordingly, defendant's motion will be granted and the Indictment dismissed.

Therefore, it is ORDERED that:

1. Defendant's Motion to Dismiss the Indictment is **GRANTED**; and

2. The Indictment is **DISMISSED**.

IT IS SO ORDERED.

United States District Judge

Dated: August 24, 2017
       Utica, New York